FOURTH DIVISION

November 17, 2005

No. 1-05-0676

AMERITECH PUBLISHING OF ILLINOIS, INC.,            )   Appeal from the

)   Circuit Court of

Plaintiff-Appellant, )   Cook County

)

v. )   No. 03 M1-172529

)

KHADER HADYEH, d/b/a Motor City Auto Repair, )   Honorable

)   Clare E. McWilliams,

Defendant-Appellee. )   Judge Presiding.

JUSTICE GREIMAN delivered the opinion of the court:

Ameritech Publishing Company of Illinois, Inc.(Ameritech), brought a breach of contract action to recover money owed for advertising placed in certain Yellow Page directories for Khader Hadyeh, d/b/a Motor City Auto Repair (Hadyeh).  Judgment was entered against Hadyeh in the amount of $20,586.85.  Thereafter, Hadyeh moved to vacate the judgment pursuant to section 2-1401 of the Code of Civil Procedure.  735 ILCS 5/2-1401 (West 2004).  The trial court granted the motion to vacate, and this appeal followed.  We reverse.

On November 8, 2000, Hadyeh entered into a one-year written contract with Ameritech agreeing to pay the sum of $644 per month to advertise his business, Motor City Auto Repair, in Ameritech's Chicago Consumer Yellow Page telephone directory.  The contract indicated it was for "Motor City" and that the customer's name and title was "Khader Hadyeh."

Thereafter, a new one-year contract was executed extending the Yellow Page advertising to include various community directories for a monthly payment of $1,788.  There, "Motor City" was designated as the advertiser and the customer's name and title were indicated as "Khader Hadyeh-Owner."

After making some payments, Hadyeh defaulted in the payment of the sums specified in the contract and on November 6, 2003, Ameritech filed a lawsuit to recover the sum of $20,936.85.  The defendant designated in the lawsuit was Khader Hadyeh, d/b/a Motor City Auto Repair.

No answer was ever filed by Hadyeh or Motor City Auto Repair in this matter although an appearance was filed on behalf of "Motor City Auto Repair."

On February 11, 2004, the parties appeared at a status call and defense counsel, although no answer had been filed,  advised plaintiff's counsel that their defense would be based on the fact that Hadyeh had sent written notice of cancellation thereby nullifying the contract of September 13, 2001.  The record indicates that plaintiff's counsel wrote a letter to defendant's counsel advising him that defendant sent the notice of cancellation 15 days after the close date for the directories that were to be published, and accordingly such cancellation was ineffective.

At the February 11, 2004, status call, Hadyeh was given 14 days to answer or otherwise plead.  However, no pleading or answer was forthcoming.  On April 2, 2004, plaintiff filed a petition seeking the entry of a default judgment setting the motion down for April 13, 2004.

At the hearing, defense counsel requested additional time and an agreed order was entered allowing an additional 14 days for the filing of an answer.  The matter was set for status on June 15, 2004.

On June 15, 2004, the answer was still not forthcoming and the case was again continued for status until August 24, 2004.

On July 2, 2004, Ameritech filed its second motion for the entry of judgment by default setting a hearing for July 13, 2004.  Due notice having been given to counsel for Hadyeh, on July 13, 2004, the trial court entered a default judgment on plaintiff's motion.  Thereafter, Ameritech filed a citation to discover assets serving Hadyeh's spouse on September 14, 2004, returnable before the court on September 23, 2004.  It should be noted that the second paragraph of the citation to discover assets which was served upon Hadyeh provides, "A judgment against Khader Hadyeh, d/b/a Motor City, was entered on 07/13/2004 and $21,443.75 remains unsatisfied." 

At the September 23, 2004, return date, Hadyeh appeared in court with counsel who advised Ameritech's attorney that he intended to file a motion to vacate the judgment, but submitted Hadyeh to a citation examination.  In testifying as to his assets, Hadyeh disclosed that he maintained a bank account at Bank One.

No motion to vacate being filed, Ameritech served Bank One with a citation on January 5, 2005, and an answer was filed indicating that it was holding the sum of $10,974.34.

Thereafter on February 2, 2005, more than six months after the entry of the default judgment, and more than four months after the citation proceedings, Hadyeh filed his motion pursuant to the provisions of section 2-1401 of the Code of Civil Procedure to vacate the judgment of July 13, 2004.

In the petition to vacate the judgment pursuant to section 2-1401, Hadyeh acknowledged that he had been served with summons and complaint in the matter, an appearance had been filed, but no answer had ever been filed.  He further stated that he did not "personally know that a judgment was entered against him *** (his counsel did not inform him of this fact)".  He also acknowledged that he was served with a citation to discover assets, but that he was "unaware of the significance of this document."  Hadyeh then stated that at the time of the citation hearing, his counsel showed Ameritech's counsel documents indicating that Motor City Auto Repair was an Illinois corporation and not a sole proprietorship and that Ameritech's counsel said he would not proceed with the matter if a motion to vacate was filed and "would not object to judgment being vacated."  Hadyeh then further acknowledged that no motion to vacate was ever filed.  

He concluded that he had relied on his counsel to "competently and diligently represent him in court, but in fact he has not done so, requiring Mr. Hadyeh to retain other counsel."  Counsel on appeal was not his initial counsel in the trial court.

After receivingAmeritech's response, the trial court granted Hadyeh's motion to vacate the judgment of July 13, 2005.

Section 2-1401 of the Code of Civil Procedure provides a comprehensive statutory procedure by which final judgments may be vacated, even after 30 days from the entry thereof.  However, to be entitled to such relief, the petitioner must affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of meritorious defense or claim; (2) due diligence presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition seeking relief.  
Smith v. Airoom, Inc.
, 114 Ill. 2d 209, 220-21 (1986); 
Beauchamp v. Zimmerman
, 359 Ill. App. 3d 143, 147-48 (2005);  
Elder v. Bryant
, 324 Ill. App. 3d 526, 529 (2001).  A party petitioning the court to vacate a default judgment must show that, through no fault or negligence of his own, error of fact or existence of a valid defense was not made to appear to the trial court in the initial proceedings.  
European Tanspa, Inc. v. Shrader
, 242 Ill. App. 3d 103, 107 (1993); 
Frandsen v. Anderson
, 108 Ill. App. 2d 194, 202 (1969).

In the case at bar, at no time did Hadyeh file an answer.  The requirement that a petition to vacate allege a meritorious defense is designed to insure the defendant, having had one chance in court which he disdained, does not have a second chance without some support for his position.  
City of Milford v. Illinois Commerce Comm’n
, 34 Ill. App. 3d 293, 297 (1975).  Ordinarily, a party seeking relief from a judgment must have acted with diligence in the original proceedings and relief is usually unavailable where such party negligently failed to assert a defense or make facts known to the court prior to the entry of judgment.  
In re Marriage of Johnson
, 339 Ill. App. 3d 237, 241 (2003).

Such a petition seeking relief from judgment must have a reasonable excuse for failing to exercise due diligence and to act within an appropriate time, and must show that through no fault or negligence on the part of the petitioner, the existence of a valid defense was not made known  to the trial court and that the petitioner had a reasonable excuse for failing to take such action within the applicable time limits.  
American Ambassador Casualty Co. v. Jackson
, 295 Ill. App. 3d 485, 489-90 (1998); 
Bank of Ravenswood v. Domino's Pizza, Inc.
, 269 Ill. App. 3d 714, 726 (1995).

Generally, relief is unavailable where a party negligently failed to assert a defense prior to the entry of judgment.  
In re Marriage of Johnson
, 339 Ill. App. 3d 237 at 241.

Hadyeh has suggested  in his petition that his counsel did not file an answer and that his counsel did not inform him as to the entry of a judgment.  A litigant, however, cannot generally obtain relief in regards to the rights of an opponent because of the failure of his counsel to keep him abreast of matters or to advise him appropriately.  
Mt. Zion State Bank & Trust v. Weaver
, 226 Ill. App. 3d 783, 788 (1992).

Nor is a litigant relieved of the consequences of his own mistakes or the mistakes or negligence of his trial counsel, 
and he is generally bound by the negligence of his legal counsel which resulted in the entry of a default judgment.  
American Reserve Corp. v. Holland
, 80 Ill. App. 3d 638, 643-44 (1980).  Although a party is generally bound by the negligence of his legal counsel, a court may refuse to impute such negligence to the client who seeks to vacate a default judgment when mitigating circumstances are present.  
Eastman Kodak Co. v. Guasti
, 68 Ill. App. 3d 484, 487-88 (1979); 
Department of Public Works & Buildings v. O'Hare International Bank
, 44 Ill. App. 3d 934, 938 (1976).

However, Hadyeh's section 2-1401 petition does not set forth any "mitigating circumstances" that would allow a court to refuse to impute the negligence of counsel to Hadyeh.

Relaxation of the due diligence requirement thereby entitling a defendant to a motion to vacate a judgment is justified only under extraordinary circumstances.  
All-Steel Employees Credit Union v. Singh
, 345 Ill. App. 3d 1005, 1008 (2004).

Standards applicable to claims of  ineffective assistance of counsel do not apply to a petitioner's claims of ineffective assistance of counsel in connection with a judgment under the Code of Civil Procedure, as they might in criminal proceedings.  
People v. Pinkonsly
, 207 Ill. 2d 555, 567-68 (2003).

In determining whether the petitioner's lack of diligence will result of an excusable mistake, for the purpose of a motion to vacate under section 2-1401 motion, the court is to consider all the circumstances surrounding the entry of the judgment including the litigant's conduct.  
Community 1st Credit Union v. Boswell
, 302 Ill. App. 3d 739, 744 (1999).

Hadyeh is correct in the observation that Illinois courts, in examining the totality of the circumstances, have inquired as to the justice and fairness of the vacation of the judgment even though the due diligence standard has not been met.  This is particularly the case when the petition to vacate is based upon circumstances that occurred outside the record. 

Hadyeh cites three cases where judgment was vacated notwithstanding lack of due

diligence on the part of the moving party.  In 
Yates v. Barnaby's of Northbrook
, 218 Ill. App. 3d 128 (1991), plaintiff failed to respond to various discovery requests, and, upon hearing defendant's motion for sanctions 
ex parte
, the trial court dismissed plaintiff's complaint with prejudice.  However, the section 2-1401 petition, filed with supporting affidavits, indicated that there was a lack of cooperation between Yates' first and second attorneys, the new attorney receiving no cooperation from original counsel.  Additionally, there appeared to be confusion regarding the time of hearing on defendant's motion for sanctions and the inability of the new counsel to locate and review court files relating to the dismissal.  
Yates
, 218 Ill. App. 3d at 129-30.  

Hadyeh also cites 
Zee Jay, Inc. v. Illinois Insurance Guaranty Fund
, 194 Ill. App. 3d 1098 (1990), where plaintiff's complaint was dismissed with prejudice for failure to comply with discovery requests.  However, it appeared that such failure was due in part to the fact that plaintiff's principal operating officer had died prior to the time for response to discovery and that plaintiff's counsel had failed to advise the court of such passing.  
Zee Jay, Inc.
, 194 Ill. App. 3d at 1104.

Again, in 
Pirman v. A&M Cartage, Inc.
, 285 Ill. App. 3d 993 (1996), defendant's section 2-1401 petition was granted.  In 
Pirman
, defendant's petition was supported by affidavits that clearly indicated the existence of a meritorious defense and further showed that defendant had forwarded various summons and complaints to his insurance agent and that the agent had forwarded the papers to the incorrect insurance company office.  Further affidavits indicated that plaintiff's attorney’s secretary had forwarded letters to defendant using an incorrect address.  
Pirman
, 285 Ill. App. 3d at 997-99.  The 
Pirman
 court observed that Illinois recognizes an insured's good faith reliance on his insurer to satisfy the requirement of due diligence in the interest of justice.  
Pirman
, 285 Ill. App. 3d at 1004.  

In examining the totality of circumstances in the case at bar, we do not find a lack of cooperation between several attorneys representing a petitioner as in 
Yates
 or the intervening death of a person required to respond to interrogatories as in 
Zee Jay
 or reliance on a petitioner's insurance company as in 
Pirman
.  Moreover, in examining Hadyeh's section 2-1401 petition, we find that there is no statement or reason setting forth why he failed to follow the progress of his own case before judgment was entered or why he waited from September 14, 2004, the time he was served with citation, to February 2, 2005, the date he filed his section 2-1401 petition.  Mere failure of counsel is not sufficient reason for vacation of a judgment.  
Sakun v. Taffer
, 268 Ill. App. 3d 343, 353 (1994).

The facts of this case indicate that Hadyeh failed to exercise the requisite due diligence in presenting an answer or defense.  Nor has he demonstrated that a manifest injustice would result unless his burden of showing due diligence was relaxed.  Hadyeh's petition does not set forth the extraordinary circumstances anticipated by Illinois cases.  
Gonzalez v. Profile Sanding Equipment, Inc.
, 333 Ill. App. 3d 680, 686 (2002).

It should be noted that even if Hadyeh had set forth extraordinary circumstances which would excuse  lack of due diligence, his section 2-1401 petition would still fail because of his failure to meet the second prong of 
Airoom
, 
i.e.
, that there be a meritorious defense set forth in the petition.  Hadyeh's section 2-1401 petition sets forth a single paragraph relating to his alleged meritorious defense which is as follows:

"9. The Defendant Khader Hadyeh has a defense to this case in 

that he was not d/b/a Motor City Auto Repair, which is an Illinois Corporation,

and that he did not sign any documents in an individual capacity, and

in fact one of the documents purportedly signed by him, the 'Customer

Receipt’ does not contain his signature, but in fact contains the signature

of the owner of the corporation, Samir Fakhoury, who signed his signature

over the name Khader Hadyeh-Owner".

He does not include in his petition any attachments or affidavits that would indicate that the corporation was in fact in good standing in Illinois at the time of the execution of the agreement.  Nor does he state the actual name of the alleged corporation in his petition.  He does not suggest that Ameritech was aware that it was dealing with a corporate entity.  As we have previously noted, the contract documents which were attached to plaintiff's complaint and are part of the record, indicated that "Motor City" was the name to be advertised in the directory and that the customer's name and title was "Khader Hadyeh" in one document and "Khader Hadyeh-owner" in the later contract.

Nothing in either contract or, for that matter, Hadyeh's section 2-1401 petition discloses the actual corporate name which is alleged.  Obviously, a contracting party should be able to determine whether it is dealing with an individual owner or with a corporate entity.  The existence of a corporate entity may clearly provide an umbrella against liability for the individual who is actually the party in interest.

When an agent of a disclosed principal executed a document and indicated next to his signature his corporate affiliation, then, absent evidence of a contrary intent in the document, the agent would not be personally bound.  
Knightsbridge Realty Partners, Ltd-75 v. Pace
, 101 Ill. App. 3d 49, 53 (1981).  On the other hand, where a defendant individually executed a contract to provide services for a nursing home, although he was an officer and sole shareholder of the nursing home corporation, he remained personally liable on the contract.  There was no mention in the contract of the corporate identity of the nursing home.  Accordingly, the individual defendant, where there was no reference to a corporate name, was held liable.  
Zella Wahnon & Associates v. Bassman
, 79 Ill. App. 3d 719, 724 (1979).  

Moreover, where an individual defendant claimed that he operated his business as president of a corporation and that the obligations sought to be enforced were not those of the individual defendant but, rather, those of an employment agency, and where there was no evidence that the employment agency was a corporation or that a corporation even existed, or that defendant had held himself out as the head of a corporation, there was no evidence to support the individual defendant's claim that he acted only in his capacity as a corporate official and he was held liable. 
Jordan/Tamraz/Caruso/Advertising, Inc. v. Parker Career Center
, 10 Ill. App. 3d 247, 248 (1973).

As we have previously indicated, the contract documents attached to Ameritech's complaint at no place indicated that Ameritech was dealing with a corporate entity.  To the contrary, Hadyeh was indicated as "owner" in the latter contract.

Our legislature has provided in section 4.05 of the Business Corporation Act of 1983 that "(a) [th]e corporate name of a domestic corporation or of a foreign corporation organized, existing or subject to the provisions of this [a]ct: (1) [s]hall contain, separate and apart from any other word or abbreviation in such name the word 'corporation’, 'company’, 'incorporated’, or 'limited’, or an abbreviation of one of such words."  805 ILCS 5/4.05 (West 2004).  

In 
Anzalone v. Durchslag
, 1 Ill. App. 3d 125 (1971), several individuals advised the plaintiff that they had recently formed a new company by the name of "General Painting Contractors Co." and that it was a division of a corporation known as "Chicago Camp Corp., Inc. (CCI)" with which plaintiff had previously done business.  Billings were made to General Painting CCI and payments made by checks bearing the name CCI.  During the trial, there was evidence that General Painting was not a corporation and was not a division of CCI.  Accordingly, the individual parties were held liable.   
Durchslag
, concluded that "[i]n Illinois a corporation has no legal right to use any name other than that under which it was organized, and use by a corporation of a name different from its legal corporate name is against the public policy of the state."  
Durschslag
, 1 Ill. App. 3d at 128. 

The liability of Hadyeh is even more compelling than the liability of the individual defendants in 
Durschslag
.  The plaintiff in 
Durschslag
 was led to believe that he was, in fact, dealing with a corporation, while Ameritech was given no such information and had no reason to believe that it was dealing with a corporate entity.

Accordingly, we find that no meritorious defense has been alleged in Hadyeh's section 2-1401 petition.

More problematic is the standard of review to be accorded the trial court's determination in ruling upon section 2-1401 petitions.  One must acknowledge that the question of whether petitions for relief from judgment should be granted lies within the trial court's sound discretion, depending on the facts and equities presented.  The appellate court is justified in disturbing the judgment of the trial court only where it finds that the trial court abused its discretion.  
Beauchamp
, 359 Ill. App. 3d at 148; 
Gonzalez
, 333 Ill. App. 3d at 686.  
Cf.
 
LaSalle National Trust, N.A., v. Lamet
, 328 Ill. App. 3d 729, 734 (2002).  Moreover, a trial court cannot be said to have abused its discretion in ruling upon a petition for relief from judgment if reasonable persons could differ as to its decision.  
Johnson v. Wal-Mart Stores, Inc.
, 324 Ill. App. 3d 543, 547 (2001)
.

Similar to the instant case, the granting of a petition for relief from judgment, while generally within the trial court's discretion, will be an abuse of discretion where the petition failed to set forth sufficient excuse for noncompliance.   
Lohja v. Checker Taxi Co.
, 92 Ill. App. 3d 491, 495 (1980).

In the instant case, the trial court vacated judgment entered in favor of Ameritech based on Hadyeh's section 2-1401 petition although Hadyeh failed to show due diligence, failed to show any equitable circumstances in the record or dehors of the record and failed to show the existence of a meritorious defense.  We believe the trial court abused its discretion in vacating the judgment entered in favor of Ameritech and against Hadyeh, and we accordingly reverse the ruling of the trial court.

Reversed and remanded to reinstate the judgment in favor of Ameritech.

 QUINN, P.J., and MURPHY, J., concur.